UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAFIK JORDAN,
a Michigan resident,

    Plaintiff,

v.

SEARS, ROEBUCK AND CO.,
a foreign corporation,

    Defendant.
_____/

Case No. 06-13851

Honorable Patrick J. Duggan

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on May 23, 2007.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                   U.S. DISTRICT COURT JUDGE

On July 19, 2006, Sharfik Jordan ("Plaintiff") filed this premises liability lawsuit against Sears, Roebuck and Co. ("Defendant") in Wayne County Circuit Court, based on a February 13, 2004 incident where Plaintiff fell while shopping at Defendant's hardware store in Westland, Michigan. Defendant timely removed this action to federal court based on diversity jurisdiction. *See* 28 U.S.C. §§ 1332(a), 1446(a)-(b). Presently before this Court is Defendant's motion for summary judgment. The Court held a hearing on Defendant's motion on May 17, 2007.

## I. Background

On the day of the incident giving rise to this lawsuit, Plaintiff was 72 years old. (Dft.'s Br. Ex. A, Plaintiff's Deposition at 8)(hereinafter "Pl. Dep."). Plaintiff was born and raised in Lebanon. (*Id.*). He moved to the United States in 1966 and has been an American citizen since birth. (*Id.*). Plaintiff's primary language is Arabic. (*Id.* at 9). He is, however, able to speak and understand English.[1] (*Id.*). Plaintiff does not wear corrective lenses and has very good vision. (*Id.* at 21).

On February 13, 2004, Plaintiff drove alone to Defendant's hardware store in Westland, Michigan to purchase a lock and some nails. (*Id.* at 30, 49). It was a nice day and it was not snowing or wet outside. (*Id.* at 50). Upon arriving at the store, Plaintiff parked his car in the store parking lot and walked into the store. (*Id.* at 49). Plaintiff was wearing a new pair of black dress shoes with smooth leather soles and rubber heels. (*Id.* at 53-54, 57). He was not carrying anything when he entered the store. (*Id.* at 59).

When he entered the store, Plaintiff wiped his feet on the floor mats located at the entrance of the store. (*Id.* at 56-57). The store's floor was cement, which was smooth and finished, (*id.* at 56), much like the floor of a garage. (Dft.'s Br. Ex. B, Kathy Stander Deposition at 42-43)(hereinafter "Stander Dep."). The store was well lit. (*Id.* at 58). Although Plaintiff had never been to this particular store, he proceeded to look for a lock and nails without asking for assistance from Defendant's sales personnel. (*Id.* at 50-51).

---

[1]By stipulation of the parties, however, Plaintiff's deposition was conducted with the aid of a state-certified interpreter. (Dft.'s Br. Ex. A, Sharfik Jordan Deposition at 3-4)(hereinafter "Jordan Dep.").

Just before he fell, Plaintiff was in an aisle in the tool department of the store.[2] The aisle was approximately 18-20 feet long and eight feet wide and was enclosed on three sides. (*Id.* at 76-77). On Plaintiff's right, there was a wall with goods hanging on a pegboard display. (*Id.* at 73, 75-76). On his left, there was a shelving unit containing various items. (*Id.* at 73, 75-76). The aisle ended with another shelving unit, which was perpendicular to both the wall and the shelving unit on Plaintiff's left.[3] (*Id.* at 70, 77, 79, 90-91). The perpendicular shelving unit was about two to two and one-half feet wide and was open on both sides, making it accessible from both the front and the rear. (*Id.* at 70, 77, 79, 90-91).

As Plaintiff was walking down the aisle, Defendant's employee was stocking items on the far side of the perpendicular shelving unit. (*Id.* at 82, 85, 86, 87-89). The employee was pouring the contents of a box of small metal parts into another container located on one of the shelves on the perpendicular shelving unit. (*Id.*). Plaintiff was about four to five feet from the front side[4] of the perpendicular shelving unit when he heard one or more of the metal parts hit the concrete floor. (*Id.* at 81-82, 89-91, 109-10). Plaintiff did not hear any parts hit the metal shelf. (*Id.*). Plaintiff testified that it sounded like the employee dropped a heavy piece of metal. (*Id.* at 93). Despite looking at the

---

[2]At the time of the incident, there were no displays containing small or loose parts in the tool department. (Stander Dep. at 40-41).

[3]For ease of reference, the Court will refer to this shelving unit as the "perpendicular shelving unit."

[4]For ease of reference, the Court will refer to the side of the perpendicular shelving unit closest to Plaintiff as the front side and the opposite side as the rear.

floor to see if any of the dropped parts landed in his area, Plaintiff did not see any of the parts fall in the aisle in which he was walking and does not know "for sure" whether any of the parts came towards him. (*Id.* at 115). After he heard the employee drop the parts, Plaintiff saw the employee pick up some or all of the dropped parts. (*Id.* at 81-82, 89-91, 110). Aside from this one instance, Plaintiff did not hear any additional parts hit the floor. (*Id.* at 113).

As he continued to browse, Plaintiff, walking slowly towards the shelf on his left at about a forty-five degree angle, slipped and fell. (*Id.* at 61, 68-69, 97, 101). While falling, Plaintiff's left foot hit the shelf. (*Id.* at 61, 69). Although Plaintiff does not know what, if anything, caused him to fall, he is positive that he stepped on something. (*Id.* at 99, 101, 104-05). Plaintiff thinks that the item that caused his fall was dropped by Defendant's employee. (*Id.* at 106). Furthermore, when asked if he knew what he stepped on, Plaintiff responded, "I don't know. I think some Sears nail or screw or something." (*Id.* at 59; *see also id.* at 104). Plaintiff also indicated that he may have stepped on a washer. (*Id.* at 87).

Plaintiff fell onto his back with the left side of his body hitting the floor first. (*Id.* at 117). While on the floor, Plaintiff laid facing the shelving unit on his left. (*Id.* at 115). Plaintiff screamed for help and the employee that was stocking the perpendicular shelving unit notified at least two other employees. (*Id.* at 120-21). Someone called an ambulance, and Plaintiff was taken to the hospital. (*Id.* at 27-29). As a result of the fall, Plaintiff suffered an invicular fracture, a dislocation, and a mid-foot Lisfranc's dislocation, all on his left foot. (Pl.'s Resp. Ex. B).

After Plaintiff fell, he looked to see what may have caused him to fall, but he did not find anything. (*Id.* at 125). Susan Stander, the manager on duty at the time of the incident, "got down on [her] hands and knees and looked for any objects that could have been there." (Stander Dep. at 30). Despite her efforts, Ms. Stander did not find any debris or water on the floor. (*Id.* at 53). In addition, Rick Plocharczyk, the "tool lead"[5] on duty at the time of the incident, looked to see if there was any moisture on the floor, but he did not find anything liquid on the floor. (Plocharczyk Dep. at 15, 20). Another employee working at the time of the incident, Paul Coleman, checked the floor for water, but he too did not find any. (Coleman Dep. at 13).

## II. Standard of Review

This Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©. No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v.*

---

[5]At his deposition, Mr. Plocharczyk described the responsibilities of the "tool lead" as basically being that of a department head responsible for sales, stock, and customers. (Plocharczyk Dep. at 6).

5

*Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

### III. Applicable Law and Analysis

Defendant argues that Plaintiff's claim is supported by nothing more than speculation. Thus, Defendant contends that Plaintiff cannot prove that it breached the duty it owed Plaintiff or that any breach of duty caused Plaintiff's injuries. In response, Plaintiff contends that his deposition testimony contains evidence that after he heard Defendant's employee drop pieces of hardware on the floor, he stepped on a small piece of hardware that came from the direction of the employee. Thus, Plaintiff contends that there is a genuine issue of material fact as to whether Defendant's alleged breach of duty caused his injuries.

Under Michigan law, "[t]o establish a prima facie case of negligence, a plaintiff must introduce evidence sufficient to prove that (1) the defendant owed a duty to the

plaintiff, (2) the defendant breached that duty, (3) the defendant's breach of its duty was a proximate cause of the plaintiff's injuries, and (4) the plaintiff suffered damages." *Berryman v. K Mart Corp.*, 193 Mich. App. 88, 91-92, 483 N.W. 2d 642, 645 (1992); *see also Schultz v. Consumers Power Co.*, 443 Mich. 445, 459, 506 N.W. 2d 175, 177 (1993). Describing the duty owed to a business invitee,[6] the Michigan Supreme Court has stated:

> It is the duty of a storekeeper to provide reasonably safe aisles for customers and he is liable for injury resulting from an unsafe condition either caused by the active negligence of himself and his employee or, if otherwise caused, where known to the storekeeper or is of such a character or has existed a sufficient length of time that he should have knowledge of it.

*Serinto v. Borman Food Stores*, 380 Mich. 637, 640-41, 159 N.W. 2d 485, 486 (1968); *see also Williams v. Cunningham Drug Stores, Inc.*, 429 Mich. 495, 500 (1988)(explaining that a storekeeper "is not an insurer of safety of invitees, and his duty is only to exercise reasonable care for their protection").

In his response brief, Plaintiff argues that the record provides sufficient evidence that Defendant caused the condition by its active negligence. (*See* Pl.'s Resp. Br. at 11)("Here, testimony is that defendant's employee **caused** the unsafe condition and the question of notice is moot.")(emphasis in original). Thus, at issue in this case is whether there is a genuine issue of material fact that Defendant or its employee caused the unsafe condition resulting in Plaintiff's fall, thereby breaching the duty it owed to Plaintiff.

While Michigan courts have "uniformly held that the happening of an accident

---

[6] It is undisputed that Plaintiff was a business invitee at the time of the incident.

alone is not evidence of negligence," *Whitmore v. Sears, Roebuck & Co.*, 89 Mich. App. 3, 9, 279 N.W. 2d 318, 321 (1979), they do allow a plaintiff to prove factual causation[7] through the use of circumstantial evidence. *Skinner v. Square D Co.*, 445 Mich. 153, 164-65, 516 N.W. 2d 475, 480 (1994). The Michigan Supreme Court has emphasized that "[t]o be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation" or "impermissible conjecture." *Id.* at 164. The difference between evidence sufficient to permit a reasonable inference and evidence that is merely "impermissible conjecture" has been described as follows:

> As a theory of causation a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridicial basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.

*Id.* (quoting *Kaminski v. Grand Trunk W. R.R. Co.*, 347 Mich. 417, 422, 79 N.W. 2d 899, 901-02 (1956)). Summarizing this standard, the Michigan Supreme Court stated that "the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id.* at 164-65, 516 N.W. 2d at 480.

---

[7]"Factual causation" or the "cause in fact element" of a negligence claim requires a plaintiff to show "that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Skinner*, 445 Mich. at 163, 516 N.W. 2d at 479.

This Court does not believe that Plaintiff has presented "substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Skinner*, 445 Mich. at 164-65, 516 N.W. 2d at 480. As an initial matter, there is no evidence of exactly what, if anything, caused Plaintiff's fall. When asked if he knew what he stepped on, Plaintiff responded, "I don't know. I think some Sears nail or screw or something." (*Id.* at 59; *see also id.* at 104). Furthermore, Plaintiff and three of Defendant's employees did not see anything on the ground after the fall. (*Id.* at 125; Stander Dep. at 53; Plocharczyk Dep. at 15, 20; Coleman Dep. at 13). Moreover, if Plaintiff's explanation is true, whatever it was, if anything, it fell on the floor, rolled or slid underneath the "kick plate"[8] on the rear side of the perpendicular shelving unit, rolled or slid two to two and one-half feet underneath the perpendicular shelving unit, rolled or slid underneath another "kick plate" on the front side of the perpendicular shelving unit, and then rolled or slid on the floor the remaining four to five feet where Plaintiff slipped on it and fell.[9]

---

[8] At her deposition, Ms. Stander testified that all of the shelving units in this particular store were equipped with "kick plates." "Kick plates" are positioned below the bottom shelf and they extend to the floor. When asked about any gap between the "kick plate" and the floor, Ms. Stander testified that on some of the shelving units "there may not be any gap at all," and on others "there could be a slight gap." (Stander Dep. at 41-42). Mr. Plocharczyk was also asked about whether the "kick plates" extend to the floor, to which he responded that nothing bigger than an eighth of an inch could pass underneath a "kick plate." (Plocharczyk Dep. at 17). Furthermore, Mr. Coleman, when asked "do the kick plates run all the way to the ground or is there a gap between the bottom of the kick plate and the floor of the store," responded "[t]hey would run to the cement." (Coleman Dep. at 16). Thus, the presence of the "kick plates" makes Plaintiff's explanation highly unlikely, if not physically impossible.

[9] Plaintiff testified that he heard the dropped part or parts hit the floor and not the concrete. (Pl. Dep. at 81-82, 89-91, 109-10). Thus, the item would have had to roll or slide underneath the perpendicular shelving unit.

Although Plaintiff's explanation may be consistent with the known facts, it is among many other plausible explanations for his fall. Assuming Plaintiff stepped on something and that it was a nail, screw, or washer, it could have been dropped by another customer.[10] Furthermore, it is also possible that whatever Plaintiff stepped on, if anything, was something different than a nail, screw, or washer.[11] It is also equally as plausible that there was nothing on the floor and Plaintiff merely slipped without stepping on anything.

Thus, in this Court's opinion, Plaintiff's version of the events is supported by nothing more than speculative or conjectural evidence. This being the case, Plaintiff has failed to present a genuine issue of material fact that "but for" Defendant's actions, he would not have been injured. In addition, because there is no evidence of what, if anything, caused Plaintiff's fall, this Court is unable to conclude that there is a genuine issue of material fact that Defendant breached the duty it owed Plaintiff.[12] Consequently, Defendant is entitled to summary judgment.

---

[10]If this were the case, then the customer would have had to get the nail, screw, or washer from another department, transported it to the tool department, and then dropped it. Ms. Stander testified that all loose parts, such as nails, screws, and washers, were located in the department called the "Back 9." (Stander Dep. at ). Although it is unclear where the "Back 9" was located in relation to the tool department, Defendant states that it was "conservatively at least 60 feet from the area where plaintiff fell." (Dft.'s Br. at 6 n.10 (citing Stander Dep. at 37-38; Plocharczyk Dep. at 7; Coleman Dep. at 19-20)).

[11]At this deposition, Plocharcyzk testified that the perforated cardboard holes or tabs from the pegboard display would often fall on the floor. (Plocharczyk Dep. at 17).

[12]Similarly, because there is no evidence of what, if anything, caused Plaintiff's fall, this Court cannot conclude that any condition was or was not open and obvious as the parties contend.

Accordingly,

**IT IS ORDERED**, that Defendant's motion for summary judgment is **GRANTED**.

                                                  s/PATRICK J. DUGGAN  
                                                  UNITED STATES DISTRICT JUDGE

Copies to:  
Daniel E. Morrisoe, Esq.  
Gregory M. Kopacz, Esq.